Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| MANUEL R. RODRÍGUEZ MELÉNDEZ **APELANTE** v. R & L DEVELOPMENT S.E.; JESÚS MANUEL RODRÍGUEZ FUENTES **APELADOS** | KLAN202500410 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama Caso Núm. G AC2015-0132 Sobre: Incumplimiento de Contrato; Cobro de Dinero |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de febrero de 2026.

## I.

El 9 de mayo de 2025, el apelante, Manuel Rodríguez Meléndez (señor Rodríguez Meléndez o apelante), presentó el recurso de *Apelación* en el que solicitó que revoquemos la *Sentencia Enmendada* emitida 11 de marzo de 2025 y notificada el 13 del mismo mes y año por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI o foro primario)[1]. Posteriormente, el 11 de abril de 2025 y notificada el 14 de abril de 2025, el TPI emitió *Resolución* en la que declaró Sin Lugar el *Escrito sobre reconsideración a sentencia, sobre determinaciones de hecho como derechos adicionales, sobre un debido proceso de ley y otros extremos.[2]* El caso envuelve una reclamación por incumplimiento de contrato y cobro de dinero en contra de R&L Development S.E. y

---

[1] Apéndice del recurso de Apelación, exhibit IV, págs. 15-28 y exhibit V, pág. 29.
[2] *Íd.*, exhibit I, pág. 1 y exhibit II, pág. 2.

Jesús Manuel Rodríguez Fuentes (R&L Development S.E., señor Rodríguez Fuentes; en conjunto, los apelados).

El 14 de mayo de 2025, emitimos una *Resolución* para que el apelante informara si se proponía reproducir la prueba desfilada ante el Tribunal de Primera Instancia.

En cumplimiento, el 19 de mayo de 2025, el apelante solicitó a este foro apelativo intermedio que se permitiera la presentación de la transcripción de prueba oral.

Luego de varios trámites procesales, el 5 de agosto de 2025, esta Curia, mediante *Resolución*, otorgó a las partes hasta el 15 de agosto de 2025 para someter Transcripción de la Prueba Oral (TPO) <u>estipulada</u>.

Ante la inacción de las partes, el 19 de agosto de 2025, emitimos una *Resolución*. Otorgamos hasta el 26 de agosto de 2025 para que los abogados de las partes mostraran causa por la cual no se les deba sancionar por su incumplimiento con nuestras resoluciones previas relacionadas a la TPO.

El 20 de agosto de 2025, el apelante presentó su *Escrito en cumplimiento de orden, al respecto de transcripción de prueba oral*. Allí, indicó que fueron autorizados por la parte apelada a presentar la transcripción del juicio.

Así las cosas, el 25 de agosto de 2025 emitimos una *Resolución*. Acogimos la prueba oral presentada y otorgamos a la parte apelante hasta el 19 de septiembre de 2025 para presentar su alegato.

A petición de la parte apelante, mediante *Resolución*, concedimos hasta el 1 de octubre de 2025 como prórroga final para presentar su alegato.

En cumplimiento, el 1 de octubre de 2025, el señor Rodríguez Meléndez presentó su *Alegato*.

Posteriormente, el 3 de octubre de 2025, emitimos *Resolución* y concedimos a la parte apelada hasta el 3 de noviembre de 2025 para presentar su alegato en oposición.

El 16 de octubre de 2025, la parte apelada presentó su *Alegato de los apelados*.

Contando con el beneficio de la comparecencia de las partes, pormenorizamos los hechos procesales más relevantes para la atención del recurso.

**II.**

El caso de marras tuvo su génesis el 6 de octubre de 2015 cuando el señor Rodríguez Meléndez incoó una *Demanda*.[3] En su escrito, detalló la relación de negocios que mantenía con su padre y apelado, el señor Rodríguez Fuentes. El apelante señaló que, en el año 2009, tras el fallecimiento de la señora Marta Luz Meléndez Veguilla, madre del apelante y esposa del apelado, su relación padre-hijo "se tornó agria y adversativa".[4] Argumentó que, desde entonces, el apelado incumplió múltiples contratos y acuerdos relacionados con el proyecto de residencias "Mansiones Monte Verde". Por tal razón, el apelado reclamó las siguientes cantidades:

[…]

a. A la Co-demandada R&L Development y al Co-demandado Jesús Manuel Rodríguez Fuentes al pago de:

   i. una suma no menor $6,981,947.00 por concepto de treinta por ciento de la ganancia generada en la venta de casas del Proyecto que le corresponde al Sr. Rodríguez bajo los términos y condiciones del Acuerdo de Participación de Ganancias suscrito el 9 de diciembre de 2004.

   ii. $2,500.00 por concepto de cuadro Serafín Rosado propiedad del Sr. Rodríguez Meléndez que se colocó en la casa modelo K-7 del Proyecto Mansiones Monte Verde.

---

[3] *Íd*, exhibit VI, págs. 30-38.
[4] *Íd.,* pág. 31.

    iii. $2,000.00 por concepto de muebles de sala, comedor y recibidor colocados en las residencias G-10 y H-28.

    iv. $443.81 por cuenta de luz de la residencia H-5 correspondiente al mes que la Sra. Malavé habitó la propiedad antes de comprarla.

    v. $750,000.00 para resarcir los daños y perjuicios sufridos por la parte demandante[.]

b. Además, al co-demandado Jesús Manuel Rodríguez Fuentes al pago de las siguientes cantidades:

    i. $33,500.00 por reembolso de gastos incurridos en labores de mantenimiento en Casa la Obra, Aibonito.

[…]

    ii. 25,000.00 por dos caballos de paso fino propiedad del Sr. Rodríguez Meléndez que el demandado regaló al Sr. Tony Torres sin el consentimiento del demandante[.]

c. Condene a la parte demandada, el pago de una cantidad razonable por gastos, costas, intereses y honorarios de abogado[.]

d. Conceda cualquier otro remedio que en derecho proceda.

[…]

Oportunamente, el señor Rodríguez Fuentes, apelado, presentó su *Contestación a la demanda*.[5] En ella, indicó que R&L Development, S.E., fue creada por razón del proyecto de vivienda Mansiones de Monte Verde en Cayey, Puerto Rico. Puntualizó que, en dicha sociedad especial, la división porcentual se daba como sigue: 1) uno por ciento (1%) correspondía al apelante; 2) noventa y nueve por ciento (99%) correspondía al apelado, su fenecida esposa y la extinta Sociedad Legal de Gananciales habida entre ambos. El apelado señaló que, debido a agresiones físicas y verbales realizadas por el apelante, solicitó al Tribunal de Primera Instancia, Sala Municipal de Cayey, una Orden de Protección. Adicionalmente,

---

[5] *Íd.*, exhibit VII, págs. 39-43. *Contestación a la demanda*, presentada por el apelado Jesús Manuel Rodríguez Fuentes. En el expediente, el escrito aparece suscrito el 29 de febrero de 2016. Consulta de Casos del Poder Judicial registró una presentación de *CONTESTACI[Ó]N A DEMANDA* el 4 de marzo de 2016.

indicó que, para evitar mayores confrontaciones, removió al apelante de su posición en R&L Development, S.E. En su escrito, el señor Rodríguez Fuentes incluyó una reconvención en la cual pidió la desestimación de la demanda y que se declare Ha Lugar la reconvención en la que solicitó el desalojo del apelante de la Casa La Obra en Aibonito. Alegó que dicha propiedad pertenece a la sucesión de la Sra. Meléndez Veguilla y que el apelante le adeuda a la Sucesión la cantidad de ciento sesenta y dos mil dólares ($162,000.00), suma que exigió por el uso de la vivienda y quince (15) jaulas de caballos que alberga la propiedad y el apelante tiene en su posesión. También, solicitó costas y gastos del litigio, más una suma razonable en honorarios de abogado.

Por su parte, el 28 de marzo de 2016, el apelado R&L Development S.E. presentó su *Contestación a la demanda*.[6] El apelado se amparó en que un *Acuerdo de Participación de Ganancias*, suscrito entre R&L Development S.E. y el apelante, estipuló que el señor Rodríguez Meléndez sería acreedor de un treinta por ciento (30%) de la ganancia en la venta de unas ciento sesenta y dos (162) casas establecidas en el acuerdo.[7] El apelado alegó, que el proyecto arrastra pérdidas. En su contestación, el apelado R&L Development S.E., incluyó una reconvención. Puntualizó que el apelante tomó un préstamo por la cantidad de setecientos cincuenta mil dólares ($750,000.00) de la Sociedad que aún no ha pagado. Como remedio, exigió el pago de dicha cantidad más los intereses legales que devengue dicho dinero hasta su total y completo pago, así como las costas del proceso y honorarios de abogado por temeridad.

---

[6] *Íd.*, exhibit VIII, págs. 44-48. *Contestación a la demanda*, presentada por el apelado R&L Development, S.E. En el expediente, el escrito aparece suscrito el 2 de marzo de 2016. Consulta de Casos del Poder Judicial registró una presentación de *CONTESTACI[Ó]N A DEMANDA* el 28 de marzo de 2016.
[7] *Íd.*, exhibit VIII, pág. 45, alegación núm. 6.

El 29 de marzo de 2016, el apelante presentó su *Contestación a Reconvención del co-demandado Jesús Manuel Rodríguez Fuentes*.[8] En síntesis, planteó que el apelado no expuso una reclamación que justifique la concesión de un remedio. Por consiguiente, solicitó que se declarara No Ha Lugar la reconvención y se impusiera una suma razonable por concepto de costas, gastos y honorarios de abogado.

Ese mismo día, el apelante presentó su escrito *Contestación a Reconvención del co-demandado R&L Development S.E.*[9] Admitió que el 9 de diciembre de 2004 suscribió un acuerdo de Participación de Ganancias y alegó que dicho acuerdo no se suscribió por mera liberalidad, sino que respondió a la industria y esfuerzo del apelante en beneficio de la sociedad R&L Development y del Proyecto Mansiones Monte Verde. Solicitó que se declarara No Ha Lugar la reconvención y se imponga una suma razonable por concepto de costas, gastos y honorarios de abogado.

El 7 de mayo de 2018, el señor Rodríguez Meléndez anunció nueva representación legal.[10]

Luego de varios trámites procesales, el 9 de enero de 2020, el apelante presentó *Escrito en solicitud de orden para la obtención de documentos, al respecto de reunión entre peritos y otros extremos*.[11] Entre otras cosas, el apelante anunció la contratación de un perito. Además, solicitó un listado de documentos para discusión entre las partes y sus peritos. También, sugirió el proceso de mediación o de arbitraje.

El 15 de enero de 2020, el apelado R&L Development S.E. presentó *Oposición a solicitud de orden*.[12] Mencionó que el Tribunal

---

[8] *Íd.*, exhibit IX, págs. 49-53.
[9] *Íd.*, exhibit X, págs. 51-53.
[10] *Íd.*, exhibit XI, págs. 54-55. *Escrito informativo asumiendo representación legal y otros extremos*, presentada por el apelante.
[11] *Íd.*, exhibit XII, págs. 56-59. En el expediente, el escrito aparece suscrito el 23 de diciembre de 2019. Consulta de Casos del Poder Judicial registró una presentación de *MOCI[Ó]N SOLIC ORDEN* el 9 de enero de 2020.
[12] *Íd.*, exhibit XIII, págs. 60-63, presentada por el apelado R&L Development, S.E.

rechazó previamente el método de mediación y subrayó que todos los documentos solicitados por el apelante ya habían sido entregados. Por lo anterior, solicitó que se declarara No Ha Lugar la petición del apelante.

Luego de varias incidencias procesales, el apelante presentó una *Demanda enmendada*, fechada el 6 de octubre de 2022.[13] Ello respondió a que el apelante alegó que la sociedad R&L Development S.E. fue disuelta. Entonces, el apelante incluyó las partes naturales e indispensables en el pleito para la expedición de los emplazamientos correspondientes. Solicitó lo siguiente:

[…]

POR TODO LO CUAL, rogamos de este Tribunal se sirva en acoger la presente demanda declarando CON LUGAR la misma y, en consecuencia, y en forma solidaria condene y ordene a las partes demandadas:

a. una suma no menor $6,981,947.00 por concepto del 30% de la ganancia generada en la venta de casas del Proyecto que [le] corresponde al demandante bajo los términos y condiciones del acuerdo de participación de ganancias suscrito el 9 de diciembre de 2004, como todo interés legal sobre esta suma hasta la fecha en que sea satisfecha la deuda.
b. $2,500.00 por concepto de cuadro Serafín Rosado propiedad del demandante, que se colocó en la casa modelo K-7 del Proyecto Mansiones Monte Verde.
c. $2,000.00 por concepto de muebles de sala, comedor y recibidos (*sic*) colocados en las residencias G-10 y H-28.
d. $443.81 por cuenta de luz de la residencia H-5 correspondiente al mes que la Sra. Malavé habitó la propiedad antes de comprarla.
e. $750,000.00 para resarcir los daños y perjuicios sufridos por la parte demandante.
f. Además, al demandado, al pago de las siguientes cantidades:

  i. $33,500.00 por reembolso de gastos incurridos en labores de mantenimiento en Casa la Obra, Aibonito.
  ii. 25,000.00 por dos caballos de paso fino propiedad del demandante que el demandado regaló al Sr. Tony Torres sin el consentimiento del demandante.

---

[13] *Íd.*, exhibit XXIV, págs. 140-150. La *Sentencia* apelada indica que la *Demanda Enmendada* se presentó el 19 de octubre de 2022. Para esa fecha, Consulta de Casos del Poder Judicial registró una entrada titulada *MOCI[Ó]N* y otra titulada *CASO EN CALENDARIO*.

iii.    Condene a la parte demandada, el pago de una cantidad razonable por gastos, costas, intereses y honorarios de abogado.

iv.    Conceda cualquier otro remedio que en derecho proceda.

[…]

El 19 de octubre de 2022, el apelante presentó *Escrito en solicitud de inclusión de partes, sustitución, sobre demandada (sic) enmendada.*[14]

Transcurrido el juicio en su fondo,[15] el 28 de agosto de 2024, notificada al día siguiente, el foro primario emitió *Sentencia.*[16] En ella, declaró No Ha Lugar la demanda al apelante, sin especial imposición de costas, gastos ni honorarios de abogados, al no haber demostrado la procedencia de su reclamo. En lo pertinente, el foro *a quo* formuló, inter alias, las siguientes determinaciones de hechos:

[…]

20. Durante los años 2001 al 2014, periodo en el cual se vendieron las 162 casas objeto del Acuerdo de Participación de Ganancias suscrito el día 9 de diciembre de 2004, R&L Development, S.E. no tuvo ganancias netas en la venta de propiedades del proyecto Mansiones de Monte Verde.

21. La parte demandante no presentó prueba alguna para refutar la información que surge de las Planillas de Contribución sobre Ingresos de la Sociedad Especial R&L Development para el año 2001 al 2014, ni de la información que surge de los Estados Financieros Auditados que apoyan dichas planillas.

22. Tampoco la parte demandante presentó prueba para impugnar el testimonio del CPA Héctor Figueroa, cuyo testimonio le mereció entera credibilidad al tribunal.

23. Al demandante no se le pagó el treinta por ciento (30%) acordado en el Acuerdo de Participación de Ganancias suscrito el día 9 de diciembre de 2004 porque no hubo ganancias netas en la venta de las 162 casas a que se refiere el mismo.

---

[14] *Íd.*, sexhibit XXIV, págs. 137-139. En el expediente, el sello de goma de radicación no es claro. El escrito aparece suscrito el 18 de octubre de 2022. Consulta de Casos del Poder Judicial registró una presentación de *MOCI[Ó]N* el 19 de octubre de 2022.

[15] *Íd.*, exhibit XXIX, pág. 171. Según indica la *Sentencia*, el juicio comenzó el 25 de enero de 2024.

[16] *Íd.*, exhibits XXIX y XXX, págs. 167-181. *Sentencia* y *Notificación.*

[…]

El 12 de septiembre de 2024, el apelante presentó *Escrito sobre reconsideración a sentencia, sobre determinaciones de hecho como derechos adicionales, sobre un debido proceso de ley y otros extremos.*[17] En síntesis, indicó que el foro primario no atendió la realidad de las ventas de los inmuebles y, en lo pertinente, planteó lo siguiente:

[…]

l. Como parte del testimonio del contable H[é]ctor Figueroa, surge que el dinero producto de las ventas de los inmuebles, fue utilizado para el pago de las acreencias del proyecto. Solo en dos (2) años, 2001-2002, mientras trabajaba el demandante en el proyecto, las ventas habrían ascendido a $17,451,498.00.

m. Recudir el valor de los inmuebles y/o ventas, no es un asunto que fuere demostrado, por ninguno de los testigos que se present[ó] ante el Tribunal; aquella expresión, realizada por el codemandado Sr. Rodríguez, sobre el ejercicio y/o asunto de pérdidas, no fue sustentada, demostrada, o de otra forma evidenciada; si ello fue un asunto único de credibilidad de aquel testimonio, sobre el del demandante, nuevamente nos permite argüir, como ejemplificar, la necesidad de prueba de refutación y/o de impugnación, como la pretendida por la parte demandante. Negarla, como vemos, priva a la parte demandante, de presentar como defender adecuadamente su reclamo.

[…]

El 2 de octubre de 2024, notificada el 4 del mismo mes y año, el TPI emitió *Resolución.*[18] En ella declaró No Ha Lugar la solicitud de reconsideración presentada por el apelante.

El 11 de marzo de 2025, notificada el 13 del mismo mes y año, el TPI emitió su *Sentencia enmendada* a los efectos de resolver la Reconvención Enmendada presentada por R&L Development S.E.[19]

---

[17] *Íd.*, exhibit XXVIII, págs. 155-166. En el expediente, el escrito aparece suscrito el 12 de septiembre de 2022, pero no cuenta con sello de goma. Consulta de Casos del Poder Judicial registró una presentación de *MOCI[Ó]N SOLIC RECONSIDERACI[Ó]N* el 12 de septiembre de 2024.

[18] *Íd.*, exhibits XXVI y XXVII, págs. 153-154. *Resolución y Notificación.*

[19] *Íd.*, exhibits IV y V, págs. 15-29. *Sentencia enmendada y Notificación.* La *Sentencia* fue originalmente emitida el 28 de agosto de 2024.

En esta determinación, el foro primario declaró No Ha Lugar dicha reconvención presentada por la parte apelada.

Posteriormente, el 27 de marzo de 2025, el apelante incoó *Escrito sobre reconsideración a sentencia, sobre determinaciones de hecho como derechos adicionales, sobre un debido proceso de ley y otros extremos.*[20] En síntesis, insistió en que el asunto de las pérdidas no fue sustentado por los apelados de modo que no se justificó el impago del Acuerdo de Participación de Ganancias suscritos por las partes.

El 11 de abril de 2025, notificada el 14 del mismo mes y año, el TPI emitió *Resolución.*[21] En ella, declaró Sin Lugar la reconsideración del apelante.

Inconforme aún, el apelante presentó ante nos su *Apelación Civil* e imputó los siguientes señalamientos de error:

a. **Erró** el Tribunal de Primera Instancia, al DECLARAR sin lugar la demanda instada, privando a la parte demandante de un proceso justo; que, como mandato constitucional, resulta corolario de un debido proceso de ley. (Art. II, Sec. 7, Constitución del Estado Libre Asociado, 1 L.P.R.A. sec. 7. Enmiendas V como XIV de la Constitución de Estados Unidos).

b. **Erró** el Tribunal de Primer Instancia al no permitir a la parte demandante la presentación de prueba de refutación como de impugnación, permitiéndose que se dictara sentencia declarando sin lugar la demanda, cuando esta misma sentencia, atribuye la ausencia de prueba presentada por la demandante, como la credibilidad que le merecieron los testigos presentados; testigos estos que resultaban contra interés. Esta determinación del Tribunal de Instancia, priv[ó] a la demandante de un juicio justo; por lo que resulta contrario a un debido proceso.

Pormenorizando el trámite procesal pertinente a la controversia presentada por la Apelación de epígrafe, en adelante consignamos el derecho aplicable.

---

[20] *Íd.*, exhibit III, págs. 3-14.
[21] *Íd.*, exhibits I y II, págs. 1-2. *Resolución* y *Notificación.*

**III.**

**A.**

La glosa jurisprudencial ha resuelto que, los foros superiores no intervendrán con las determinaciones de hechos ni las adjudicaciones de credibilidad realizadas por el TPI, al menos que haya incurrido en error manifiesto, pasión, prejuicio o parcialidad. *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012); *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009). De hecho, son pocos los casos en donde se ha concluido que el foro de instancia incurrió en pasión, prejuicio, parcialidad o error manifiesto al evaluar la prueba desfilada. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

Esta norma de deferencia judicial se apoya en que la tarea de apreciación de la prueba testifical está llena de elementos subjetivos y es el TPI quien está en mejor posición para aquilatarla. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); véase también, *Dávila Nieves v. Meléndez Marín*, supra, pág. 771. Cónsono con ello, cuando "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". Regla 110 (D) de Evidencia, 32 LPRA Ap. VI, R. 110; *Rivera Menéndez v. Action Service*, supra, pág. 444; *SLG Rivera Carrasquillo v. AAA*, supra, pág. 357. Por su parte, los foros apelativos solo cuentan con "récords mudos e inexpresivos". *SLG Rivera-Pérez v. SLG Díaz-Doe et. al.*, 207 DPR 636, 658 (2021). Por lo tanto, la parte apelante que cuestione una determinación de hechos realizada por el foro primario debe fundamentar la existencia de pasión, prejuicio o parcialidad, o error manifiesto. *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356; *Flores v. Soc. de Gananciales*, 146 DPR 45, 49-50 (1998).

Ahora bien, a pesar de la deferencia judicial, cuando las conclusiones de hecho del TPI están basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido. *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Ante tales circunstancias, el Tribunal Apelativo tendrá facultad para adoptar su propio criterio con relación a la apreciación y evaluación de la prueba pericial, e incluso para descartarla, aunque resulte técnicamente correcta. *Íd.*; *Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001).

Ahora bien, la alegación de una parte de que el foro primario erró al apreciar la prueba, adjudicar credibilidad o determinar los hechos, no debe hacerse ligeramente. *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 775. Así pues, la parte que "señale que el juzgador actuó mediando pasión, prejuicio o parcialidad debe sustentar sus alegaciones con evidencia suficiente [...]." *Íd.* Es decir, quién impugne una sentencia o resolución deberá presentar evidencia sustancial que derrote la presunción de corrección que cobija la decisión del Tribunal de Primera Instancia. Esto es, evidencia que en una mente razonable pueda aceptarse como adecuada para sostener una conclusión. *Vázquez Cintrón v. Banco Desarrollo*, 171 DPR 1, 25 (2007).

Relacionado a lo anterior, resaltamos que, en casos civiles, la decisión del juzgador "se hará mediante la preponderancia de la prueba, a base de criterios de probabilidad". Regla 110(f) de Evidencia, *supra*, R. 110(f). Quien sostiene la afirmativa deberá probar su causa de acción mediante la presentación de evidencia que sustente cada una de sus alegaciones. Regla 110(a) de las Reglas de Evidencia, *supra*. Sin embargo, el testimonio vertido por un sólo testigo es suficiente para satisfacer el grado de prueba requerido, si logra convencer al juzgador. Regla 110(d) de Evidencia, *supra*. En suma, la intervención de un foro apelativo con la

evaluación de la prueba testifical que haya realizado el foro primario procede en aquellos casos en que un análisis integral de dicha prueba ocasione, en el ánimo del foro apelativo, una insatisfacción o intranquilidad de conciencia tal que hiera el sentido básico de justicia. ***Pueblo en Interés del Menor J.M.G.***, 139 DPR 98 (1995), citando a ***Pueblo v. Cabán Torres***, 117 DPR 645 (1986).

**B.**

En materia contractual, el Artículo 1213 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 3391,[22] disponía que los contratos son fuente de obligación entre las partes siempre que concurran tres elementos, a saber: consentimiento, objeto y causa. De manera que, una vez los contratos se perfeccionan por el mero consentimiento, desde entonces obligan no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 LPRA ant. sec. 3375. Del mismo modo, es norma reiterada en nuestro ordenamiento jurídico, el principio de la autonomía contractual entre las partes. Ello permite a las partes establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre y cuando estos no sean contrarios a las leyes, la moral y al orden público. Véase el entonces vigente Artículo 1207 del Código Civil, 31 LPRA ant. sec. 3372.

Con respecto a la interpretación de los contratos, el Artículo 1235 del Código Civil, 31 LPRA ant. sec. 3473, vigente entonces, disponía que cualquiera que sea la generalidad de los términos de un contrato, no deben entenderse comprendidos en éste cosas distintas y casos diferentes de aquéllos que los contratantes pretendieron pactar. Innumerables veces el Tribunal Supremo ha

---

[22] El Código Civil de 1930, según enmendado, fue derogado por la Ley Núm. 55-2020. Sin embargo, hacemos referencia a las disposiciones del primero, debido a que al momento de los hechos y del comienzo del proceso judicial del presente caso el nuevo ordenamiento civil no se encontraba vigente.

reiterado la norma máxima en materia de interpretación de contratos, a saber: si los términos de un contrato son claros y no existe duda en torno a la intención de los contratantes, debemos ceñirnos al sentido literal de sus cláusulas. Véase el entonces vigente Artículo 1233 del Código Civil, 31 LPRA ant. sec. 3471; *Negrón Vélez v. ACT*, 196 DPR 489, 506-507 (2016).

Ahora bien, cuando las palabras utilizadas en el contrato aparenten ser contrarias a la intención evidente de los contratantes, prevalecerá la intención de éstos al pactar. Íd. De ser necesario juzgar la intención de las partes al contratar, habremos de considerar sus actos, coetáneos y posteriores al contrato, y cualquier otro factor que arroje luz sobre sus voluntades. Véase el entonces vigente Artículo 1234 del Código Civil, 31 LPRA ant. sec. 3472.

### C.

De ordinario, en la reclamación sobre cobro de dinero, el demandante solo tiene que probar que: (1) existe una deuda válida; (2) la deuda no se ha pagado; (3) el demandante es el acreedor; y (4) la parte demandada es la deudora. *Gen. Elec. v. Concessionaries, Inc.,* 118 DPR 32, 43 (1986). En cuanto a la deuda, es necesario demostrar que la misma es líquida, vencida y exigible. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001). Dentro de este marco, una deuda es líquida cuando la cantidad debida es cierta y determinada. Íd. Es decir, cuando se conoce la cuantía que se debe. Asimismo, es exigible y vencida cuando debe ser satisfecha por la naturaleza de la obligación o por requerimiento del acreedor. Véase *Guadalupe v. Rodríguez,* 70 DPR 958, 966 (1950).

### D.

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico establece que, ninguna persona será

privada de su libertad o propiedad sin el debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. Art II, Sec. 7, **Const. ELA** [Const. PR], LPRA, Tomo 1. El debido proceso de ley tiene dos vertientes que son: sustantiva y procesal. El debido proceso de ley sustantivo los tribunales están obligados a examinar la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. *Rivera Rodriguez & Co. v. Stowell Taylor*, 133 DPR 881, 887 (1999). Por otro lado, el debido proceso de ley en su vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Rivera Rodriguez & Co. v. Stowell Taylor*, supra, pág. 888.

Cónsono con ello, se han reconocido las siguientes garantías procesales, las cuales conforman el debido proceso de ley: i) la concesión de una vista previa; ii) una notificación oportuna y adecuada; **iii) el derecho a ser oído**; iv) el derecho a confrontarse con los testigos en su contra; **v) a presentar prueba oral y escrita a su favor**; y vi) la presencia de un adjudicador imparcial. *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR 109, 113-114 (1996). Énfasis suplido. Véase, entre otros, *Vendrell López v. AEE*, 199 DPR 352, 359 (2017).

**IV.**

En esencia, en el caso ante nos, el apelante imputó al TPI haber errado al declarar sin lugar la demanda instada y que tal determinación lo privó de su derecho al debido proceso de ley. A su vez, planteó que el TPI erró al no permitir la presentación de prueba de refutación como de impugnación. Por estar relacionados entre sí, discutiremos en conjunto los dos errores imputados.

Según pormenorizado en el derecho previamente expuesto, la vertiente procesal del debido proceso de ley exige el cumplimiento de unas garantías procesales, en las que se incluye el derecho a ser oído y la presentación de prueba oral y escrita a su favor.

Por su parte, las Reglas de Evidencia del 2009, *supra*, regulan la forma en que se admitirá la prueba en los tribunales.

En este caso, incoado en el año 2015, la contención mayor se centra en si el compromiso de pago redactado en el *Acuerdo de partición de ganancias* generaba acreencia en virtud de las "ganancias" o de las "ventas" de ciertos lotes enumerados del proyecto Mansiones de Monte Verde en Cayey. Principalmente, el apelante argumenta que el *Acuerdo de partición de ganancias* suscrito por las partes obliga al apelado a pagar un 30% de las ventas de unas residencias del mencionado proyecto.[23] La lectura de la primera y segunda estipulación del contrato, lee como sigue:

> --------------------------ESTIPULAN--------------------------
>
> PRIMERO: Que el compareciente de la primera parte reconoce que el compareciente de la segunda parte, don Manuel René Rodríguez Meléndez, por su dedicación continua en las ventas y administración del proyecto "Mansiones de Monte Verde" que ubica en la ciudad de Cayey, Puerto Rico, se estipula que éste último es acreedor de **un treinta por ciento (30%) en las ganancias obtenidas en la venta de las casas pertenecientes a los siguientes lotes de dicho proyecto**:
>
> […]
>
> SEGUNDO: Las partes han acordado que dicha participación de un treinta por ciento (30%) le será pagadera al compareciente de la segunda parte en la forma y manera que éste último entienda conveniente, tomando en consideración que la misma le beneficie en cuanto al pago de contribuciones se refiera. -----------[24]
>
> […]

(Énfasis nuestro)

---

[23] *Alegato del Apelante,* págs. 12-13, presentado el 1 de octubre de 2025.
[24] Véase, Apéndice de la *Apelación* exhibit XXV, págs. 151-152.

Según surge del expediente, un informe pericial del 12 de diciembre de 2017 realizado por el Contador Público Autorizado, CPA José Veguilla, definió "ganancia", según los estándares del ejercicio de su profesión, como "la riqueza que una o las distintas partes involucradas obtienen como producto de una transacción o evento económico".[25] En su análisis y aplicación al caso, utilizó los estados de ingresos y gastos de R&L Development S.E., generados por su CPA, Héctor Figueroa con la información en poder de la sociedad especial.[26] Indicó que los reportes reflejaron ausencia de ganancias agregadas al momento de la venta de la última unidad sujeta al *Acuerdo de partición de ganancias*. Por consiguiente, concluyó que no hay comisión por pagar.

En el juicio *celebrado el 25 de enero de 2024*, durante el examen directo, el apelante, señor Rodríguez Meléndez, declaró que el *Acuerdo de partición de ganancias* comprendía el treinta por ciento (30%) de las ventas "una vez se pagaran la totalidad de los préstamos, pues de las casas restantes y de todo el inventario".[27] La representación legal del apelante justificó la mención de las obligaciones que generaba el proyecto al argumentar que las obligaciones en el contrato en discusión surgen de contraprestaciones entre las partes. Por su parte, la parte apelada objetó porque se estaba tratando de traer prueba para enmendar las alegaciones de la demanda y solicitó que su testimonio se sujetara a lo que expresamente se acordó en el contrato ya que fue el documento estipulado por las partes en procesos anteriores al juicio.[28]

---

[25] *Íd.*, exhibit XXI, págs. 118-120.
[26] *Íd.*, págs. 111-117. Según el expediente, un incendio ocurrido el 29 de junio de 2015 y el paso del Huracán María en el año 2017 incidieron en el deterioro y destrucción de los archivos corporativos de R&L Development S.E. y de los documentos correspondientes.
[27] TPO del juicio celebrado *el 25 de enero de 2024*, pág. 34, líneas 3-9.
[28] *Íd.*, pág. 34-40.

Posteriormente, en el contrainterrogatorio, el apelante fue indagado sobre el significado del término "ganancia". En esa ocasión, definió "ganancia" como: "cuando uno vende algo, le resta lo que le costó, la diferencia de eso es una ganancia obtenida". Del proyecto en cuestión y las casas mencionadas en el acuerdo, el apelante no logró precisar la ganancia con exactitud.[29]

Subsiguientemente, el otro testigo presentado por la parte apelante fue el señor Rodríguez Fuentes. Durante su testimonio, admitió que las residencias sujetas al *Acuerdo de partición de ganancias* fueron vendidas en su totalidad, pero que no hubo ganancia, razón por la cual no se satisfizo el pago establecido contractualmente.[30]

Como último testigo en ese primer día de los procedimientos, el CPA Héctor Figueroa testificó ampliamente sobre las planillas informativas de ingresos de R&L Development S.E. Como auditor de dichas planillas, explicó que su ejercicio constaba en validar la información provista por la sociedad especial.[31]

Posteriormente, en la *continuación del juicio celebrado el 21 de marzo de 2024*, el CPA Héctor Figueroa continuó con su testimonio. Posteriormente, fue contrainterrogado por la representación legal del apelado. En ese turno, el testigo explicó que el proyecto reflejó una pérdida neta englobada de quinientos cuarenta y tres mil dólares (-$543,000.00).[32] Luego de este turno, la representación legal del apelante invocó la Regla 37 de Procedimiento Civil, 32 LPRA Ap. V., R.37 y las Reglas 608 y 611 de Evidencia, *supra*, R. 608 y 611, para justificar, sin éxito, un nuevo llamado a la silla testifical

---

[29] *Íd.*, págs. 115-119; pág. 136, líneas 1-22; pág. 137, líneas 1-4.
[30] *Íd.*, págs. 188-190.
[31] *Íd.,* pág. 237; líneas 20-23.
[32] TPO *del juicio celebrado el 21 de marzo de 2024*, pág. 159, líneas 9-23: pág. 160, líneas 1-9.

para el apelante para refutar el testimonio ofrecido por su mismo testigo, el CPA Héctor Figueroa.[33]

Celebrado el Juicio, en lo pertinente, el foro primario resolvió lo siguiente:

[...]

21. La parte demandante no presentó prueba alguna para refutar la información que surge de las Planillas de Contribución sobre Ingresos de la Sociedad Especial R&L Development para el año 2001 al 2014, ni de la información que surge de los Estados Financieros Auditados que apoyan dichas planillas.

22. Tampoco la parte demandante presentó prueba para impugnar el testimonio del CPA Héctor Figueroa, cuyo testimonio le mereció entera credibilidad al tribunal.

23. Al demandante no se le pagó el treinta (30%) acordado en el Acuerdo de Participación de Ganancias suscrito el día 9 de diciembre de 2004 porque no hubo ganancias netas en la venta de las 162 casas a que se refiere el mismo.
[...]

El dictamen apelado indicó que los apelados no presentaron testigos.[34]

Surge palmariamente de la TPO, que el TPI concedió amplia oportunidad a las partes para desfilar su prueba testifical, documental y pericial. También, el proceso transcurrió de conformidad con lo establecido en las Reglas de Evidencia, *supra*, sobre turnos correspondientes para interrogar y contrainterrogar testigos y la presentación ordenada de la prueba. En cuanto a las Reglas de Evidencia, *supra*, invocadas por el apelante para justificar un nuevo turno a la silla testifical, concluimos que careció de fundamento para sostener su petición e impugnar la credibilidad del testigo CPA Héctor Figueroa, cuyo testimonio resultó suficiente y creíble al tribunal sentenciador. Por su parte, la Regla 37 de Procedimiento Civil, *supra*, gobierna los procesos de Manejo del

---

[33] *Íd.*, págs. 171-175.
[34] Apéndice de la *Apelación,* exhibit IV, pág. 25. *Sentencia enmendada.*

Caso <u>previo</u> a la etapa del juicio, por lo que no es de aplicabilidad en la etapa del juicio en su fondo.

Adviértase que los detalles contables relacionados con este caso han sido **amplia y largamente** litigados por las partes con la prueba declarada como disponible, cumpliendo así con el principio comprendido en el debido proceso de ley en su vertiente procesal. Se desfiló amplia evidencia sobre los conceptos en cuestión, entiéndase "ganancia" versus "venta". Las ganancias no pudieron ser probadas, las cuales sujetaban la obligación de pago según acordado, por lo cual el foro primario no erró al dictaminar que el apelante no demostró a satisfacción del Tribunal la procedencia de su reclamo. Concluimos que las determinaciones de hechos están apoyadas en la prueba documental, testifical y pericial que fue aquilatada por el TPI.

Finalmente, tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de la voluminosa TPO, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incurrió en los errores imputados por el apelante.

**V.**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones